1

2

3

4

5

6

7

8                           **UNITED STATES DISTRICT COURT**

9                           **EASTERN DISTRICT OF CALIFORNIA**

10

11   SUMMER KASANDRA WALSH,                    )  Case No.: 1:13-cv-00991 - JLT
                                                )
12                Plaintiff,                     )  ORDER DIRECTING ENTRY OF JUDGMENT IN
                                                )  FAVOR OF DEFENDANT, COMMISSIONER OF
13         v.                                    )  SOCIAL SECURITY, AND AGAINST PLAINTIFF,
                                                )  SUMMER WALSH
14   CAROLYN W. COLVIN,                          )
     Acting Commissioner of Social Security,     )
15                                               )
                 Defendant.                      )
16   ────────────────────────────────

17         Summer Kasandra Walsh ("Plaintiff") asserts she is entitled disability insurance benefits under

18   Title II of the Social Security Act.  Plaintiff seeks judicial review of the decision denying benefits,

19   asserting the administrative law judge erred in evaluating the credibility of her subjective complaints.

20   For the reasons set forth below, the administrative decision is **AFFIRMED**.

21                           **PROCEDURAL HISTORY**

22         Plaintiff filed an application for a period of disability and disability insurance benefits on

23   September 23, 2010, alleging disability beginning September 3, 2009.[1]  (Doc. 17-6 at 3.)  The Social

24   Security Administration denied her claim initially and upon reconsideration.  (Doc. 17-3 at 16.)  After

25   requesting a hearing, Plaintiff testified before an administrative law judge ("ALJ") on May 22, 2012.

26   (*Id.* at 27.)  The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued

27

28         [1] In addition, Plaintiff filed an application for supplemental security income on December 17, 2010 (Doc. 17-6 at
     5), which was denied at the initial level because Plaintiff's income was too great (Doc. 17-3 at 16).

                                              1

an order denying benefits on June 5, 2012.  (*Id.* at 16.)  Plaintiff requested review by the Appeals Council of Social Security, which denied review of the ALJ's decision on April 5, 2013.  (Doc. 17-3 at 7.)  Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

Plaintiff filed a complaint for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) on June 28, 2013.  (Doc. 1.)  She filed her opening brief in the action on March 12, 2014, arguing the ALJ failed to properly reject the credibility of her subjective complaints, and the credibility determination was not supported by the record.  (Doc. 20.)  The Commissioner filed a response on April 12, 2014, asserting the ALJ's decision is supported by substantial evidence and should be affirmed by the Court.  (Doc. 21.)  Plaintiff did not file a reply brief.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish his disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  Once a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to show the claimant is able to engage in substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920 (a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider objective medical evidence and opinion hearing testimony.  20 C.F.R. §§ 416.927, 416.929.

### A.   Medical Evidence

Dr. Emmanuel Fabella performed an internal medicine consultation on February 10, 2011.  (Doc. 17-3 at 6.)  Dr. Fabella noted Plaintiff's "main complaint" was" pain in her left foot following a fracture, which she described as "mild to moderate, frequent, nonradiating and sharp."  (*Id.*)  Plaintiff told Dr. Fabella that she was given an aircast, took physical therapy for a year, and wore arch supports.  (*Id.*)  Plaintiff reported that "even walking to the mailbox makes her limp and is enough to hurt her left foot."  (*Id.*)  Dr. Fabella noted he "observed [Plaintiff] walking in the parking lot, and [her] gait was normal and balance was preserved."  (*Id.* at 8.)  However, Plaintiff had "an initial antalgic gait" when she rose from a sitting position.  (*Id.*)  Dr. Fabella determined Plaintiff's range of motion was "grossly within normal limits bilateraly" in her back, shoulders, elbows, wrists, hands, hips, knees, and ankles.  (*Id.* at 9.)  Plaintiff's left foot had "no deformity or bony step-off, although she had mild tenderness

over the proximal aspect of the 2nd and 3rd metatarsal bones." (*Id.*)  Based upon the examination, Dr. Fabella opined Plaintiff was "able to lift and carry 20 pounds occasionally and 10 pounds frequently;" "walk and stand no more than six hours total out of an eight-hour day;" and "climb, balance, kneel, and crawl only occasionally." (*Id.* at 10.)  Further, Dr. Fabella opined Plaintiff was "unable to walk on uneven terrain, climb ladders, or work at heights." (*Id.*)

Dr. Kenneth Wainner completed a physical residual functional capacity assessment on March 16, 2011.  (Doc. 17-8 at 13.)  Dr. Wainner noted Plaintiff had left foot pain with a history of a fracture. (*Id.*)  Wainner noted Plaintiff was "unable to stand on [her] toes or heels … [or] squat on her left leg because of left foot pain." (*Id.* at 14.)  He opined Plaintiff was able to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about six hours in an eight-hour day; and sit six hours in an eight-hour day.  (*Id.*)  In addition, Dr. Wainner determined Plaintiff was never able to climb ladders, ropes or scaffolds.  (*Id.* at 15.)  However, Plaintiff was able to occasionally climb ramps and stairs, balance, kneel, crouch, and crawl.  (*Id.*)

On May 4, 2011, Dr. Nasrabadi opined Plaintiff was "partially" credible, and affirmed the residual functional capacity restricting Plaintiff to light work with occasional postural limitations. (Doc. 17-8 at 21-22.)

**B.    Administrative Hearing Testimony**

Plaintiff testified before the ALJ on May 22, 2012.  (Doc. 17-3 at 27.)  Plaintiff reported she was thirty-nine years old at the hearing, and lived with her husband and three children.  (*Id.* at 32-33.) She report that she held a valid driver's license, and drove "less than three miles," "once or twice a day." (*Id.* at 33-34.)  In addition, Plaintiff stated that she had driven herself to the hearing, which took "[a]bout 55 minutes." (*Id.* at 34.)

According to Plaintiff, she was unable to work because of "the whole fact of sitting for too long and standing for long." (Doc. 17-3 at 38.)  Plaintiff said the option to sit and stand all day would not be enough because the pain would "take[] a hold of my train of thought, my thinking, and so on." (*Id.*) Plaintiff estimated she could stand "[t]wo or three minutes" at one time without moving, walk ten or twenty yards at one time, and sit "[t]en or 15 minutes" at one time.  (*Id.* at 39-40.)  She believed that she could stand "two to three" hours and sit "five to six" hours in an eight-hour day.  (*Id.*)  Plaintiff

1 believed she was able to lift two gallons of milk, but could not lift five pounds that "over and over."

2 (*Id.* at 41.)

3       She stated that she did not visit others because it was "more convenient" to have them come to

4 her home, where she could put her leg up. (Doc. 17-3 at 34.) Also, Plaintiff said she no longer

5 attended religious service because it was "too much" to have to get herself and the kids ready, to take

6 her children to their classrooms, and then have to walk in the worship center. (*Id.* at 35.) Plaintiff

7 reported her husband and children washed the dishes, and housework was "a group effort." (*Id.* at 42.)

8 She said a typical day involved getting her children ready for school, taking care of her three-year-old

9 daughter and step-granddaughter who was "about the same age." (*Id.* at 43.) Plaintiff stated that she

10 iced her knee or foot "throughout the day," and would go get her kids from school at 2:00 p.m. if she

11 felt able to do so. (*Id.*)

12       Plaintiff testified that she was no longer seeking treatment for her foot pain. (Doc. 17-3 at 35.)

13 However, she reported that she took over-the-counter naproxen and tramadol, which she received a

14 prescription for after visiting an emergency room for swelling in her knee and ankle. (*Id.* at 37-38.)

15 Plaintiff stated she did not have any side effects from the medicine, and they gave her "[t]emporary"

16 relief." (*Id.* at 38.) Further, Plaintiff explained that she had "almost a full year of physical therapy

17 with a temporary relief," and her podiatrist "couldn't think of anything else that he could do." (*Id.* at

18 35.) Plaintiff said her pain was such that she could not "put a sheet on top of [her] foot." (*Id.*)

19 However, she reported that she took tramadol and over-the-counter naproxen for the pain." (*Id.* at 38.)

20 **C.     The ALJ's Findings**

21       Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial

22 gainful activity between "the period from her alleged onset date of September 3, 2009, through her

23 date last insured of December 31, 2011." (Doc. 17-3 at 18.) Second, the ALJ found Plaintiff's severe

24 impairments included: "fracture of the cuboid of the left foot, and ankle sprain with reduced muscle

25 strength." (*Id.*) Next, the ALJ found Plaintiff did not have an impairment or a combination of

26 impairments that met or medically equaled a Listing. (*Id.*)

27       The ALJ determined Plaintiff had the residual functional capacity ("RFC") "to lift and carry 20

28 pounds occasionally and 10 pounds frequently, si[t], stand, and walk for six hours in an 8-hour day,

occasionally climb ramps and stairs, balance, knee, crouch, and crawl, never climb ladders, ropes, or scaffolds, and frequently stoop." (Doc. 17-3 at 18.)  Further, the ALJ found Plaintiff "should avoid concentrated exposure to hazardous machinery and heights." (*Id.*)  With this RFC, the ALJ found Plaintiff was "capable of performing past relevant work as an office manager, service dispatcher, admin clerk, and teacher's aide." (*Id.* at 21.) Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.*)

## DISCUSSION AND ANALYSIS

Plaintiff contends the ALJ "failed to provide legally sufficient reasons to reject [her] testimony." (Doc. 20 at 4, emphasis omitted.)  In evaluating credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if there is no evidence of malingering, the ALJ must make specific findings as to the claimant's credibility by setting forth clear and convincing reasons for rejecting her subjective complaints.  *Id.* at 1036.

An adverse credibility determination must be based on clear and convincing evidence where there is no affirmative evidence of a claimant's malingering and "the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).  Here, the ALJ determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Doc. 17-3 at 19.)  However, the ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not credible ..." (*Id.*)

Plaintiff asserts, "[T]he ALJ did not properly conduct the mandated second step of the two-step analysis," and failed to articulate clear and convincing reasons for rejecting her credibility. (Doc. 20 at 5-6.)  According to Plaintiff, "the ALJ decision is void of any sufficient rationale at all as to why the ALJ ignored and disregards Ms. Walsh's testimony." (*Id.* at 6.)  Plaintiff contends "it appears that the ALJ simply rejects [her] testimony based on a belief that the testimony is not credible because it lacks support in the objective medical evidence," but "a rejection of a claimant's testimony based on a lack of

6

objective evidence is always legally insufficient." (*Id.* at 7, citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991)). On the other hand, Defendant contends the ALJ properly considered Plaintiff's failure to seek treatment, her daily activities, and inconsistencies in Plaintiff's testimony and actions. (Doc. 21 at 6-7.)

   *Objective medical evidence*

   As a general rule, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of the Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit explained, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). Here, the ALJ's credibility determination did not rest solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff. Thus, objective medical evidence was a relevant factor in evaluating Plaintiff's credibility.

   However, if an ALJ cites the medical evidence as part of a credibility determination, it is not sufficient for the ALJ to make a simple statement that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ "must state which . . . testimony is not credible and what evidence suggests the complaints are not credible"). Here, the ALJ found "the objective medical evidence does not support the alleged severity of symptoms." (Doc. 17-3 at 21.) The ALJ noted that Plaintiff's "treatment [was] not consistent with someone who is allegedly severely limited by her subjective complaints."[2] (Doc. 17-3 at 20.) Plaintiff

---

   [2] Notably, the treatment Plaintiff received, especially when conservative in nature, is by itself a legitimate consideration in a credibility finding. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999).

"cancelled or failed to show up for doctor appointments on a number of occasions." (*Id.*, citing Exh. 6F, p.27-28, 37, 47, 88, 89, 106.) Further, the ALJ noted Plaintiff had normal ranges of motion in her back, shoulders, elbows, wrists, hips, knees, and ankles. (*Id.*) In addition, there was "no deformity or bony step-off" in her left foot. (*Id.*) Because the ALJ carried his burden to identify the medical evidence undermining Plaintiff's complaints, the objective medical record supports the ALJ's adverse credibility determination.

*Plaintiff's daily activities*

When a claimant spends the day engaged in activities that are transferable to a work setting, a finding of this fact may be sufficient to discredit a claimant's allegations of a disabling impairment." *Morgan*, 169 F.3d at 600 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). A claimant's ability to cook, clean, do laundry and manage finances may be sufficient to support an adverse finding of credibility. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (the claimant's activities "suggest she is quite functional. She is able to care for her own personal needs, cook, clean and shop. She interacts with her nephew and boyfriend. She is able to manage her own finances..."). Likewise, an ALJ may conclude "the severity of . . . limitations were exaggerated" when a claimant exercises, gardens, and participates in community activities. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).

Here, the ALJ noted Plaintiff "got her children ready for school, took care of her personal grooming needs, occasionally prepared meals (a few times a week), [and] did laundry." (Doc. 17-3 at 19.) The ALJ concluded these activities were "not as limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (*Id.*) Rather, the ALJ gave "great weight" to her ability to perform these activities, and found Plaintiff was not precluded from her past relevant work. As the Ninth Circuit explained, "Although the evidence of [the plaintiff's] daily activities may also admit of an interpretation more favorable to [her], the ALJ's interpretation was rational, and [the court] 'must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.'" *Burch*, 400 F.3d at 680 (quoting *Magallanes*, 881 F.2d at 750). Thus, Plaintiff's daily activities support the adverse credibility determination.

///

*Inconsistent Statements*

An ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). In this case, the ALJ noted Plaintiff testified that she could only "sit for 10 to 15 minutes at one time" and drove "less than three miles" per day. (Doc. 17-3 at 20.) However, the ALJ noted also that Plaintiff drove herself to the hearing, which she testified took about 55 minutes. (*Id.*) In addition, the ALJ noted Plaintiff's "gait was normal and balance was preserved" when Dr. Fabella observed her from the parking lot, though she exhibited "an initial antalgic gait when she got up from a sitting position" in the examination. (*Id.*) Thus, the ALJ identified inconsistencies in Plaintiff's testimony and actions, which support the adverse credibility determination.

## <u>CONCLUSION AND ORDER</u>

As discussed above, the ALJ satisfied his burden to make "a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Because the ALJ applied the proper legal standards and his findings are supported by the record, the ALJ's determination that Plaintiff is not disabled must be upheld by the Court. *See Sanchez*, 812 F.2d at 510.

Accordingly, **IT IS HEREBY ORDERED**:

1.      The administrative decision is **AFFIRMED**; and

2.      The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Carolyn Colvin, Acting Commissioner of Social Security, and against Plaintiff Summer Walsh.

IT IS SO ORDERED.

Dated:   __June 4, 2014__                      _____/s/ Jennifer L. Thurston__
                                                UNITED STATES MAGISTRATE JUDGE

9